UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
MICHAEL LAWYER,
                         Plaintiff,

                                                                                     03 Civ. 7577 (RPP)
      - against -

                                                                                      **OPINION and ORDER**
TIMOTHY GATTO,
                         Defendant.
-------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      Defendant, Timothy Gatto, moves for summary judgment pursuant to Federal Rules of Civil Procedure ("FRCP") Rule 56(c) in a lawsuit brought by Plaintiff, Michael Lawyer pursuant to 42 U.S.C. § 1983. As grounds for the motion, Defendant alleges that Plaintiff has failed to exhaust his claim as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997(e) (2000). For the reasons that follow, Defendant's motion is denied.

## BACKGROUND

**A.    Factual History**

    **1.    The Assault**

      According to Plaintiff, on April 15, 2003, while an inmate at Fishkill Correctional Facility ("Fishkill"), he was "physically assaulted" by Defendant in the office of the Corrections Officers ("CO"). (Plaintiff's Amended Complaint ("Am. Compl.") dated October 23, 2003.) Plaintiff contends that Defendant, CO Gatto, assaulted him because earlier that day Plaintiff had referred to Defendant, in front of two other COs, as "the jerk who has been writing me all the tickets." (See Ex. A to Affidavit of Michelle P. Stone

("Stone Aff."), dated March 14, 2006 at 3-12, Letter from Michael Lawyer, dated April 25, 2003 ("April 25, 2003 Letter").)  At around 5:00 PM, Plaintiff was "called out" for his medication.  On his way back from picking up his medications, he noticed Defendant sitting at the CO's desk.  (Id.)  When Plaintiff went to put his pass (to enable him to get medications) back in the appropriate box on the CO's desk, Defendant jumped up and said "get . . . out of my face."  (Id.)  He then told Plaintiff to follow him into the CO's office, where he accused Plaintiff of calling him a jerk earlier in the day.  (Id.)  After a short exchange, Defendant allegedly told Plaintiff to "take the first punch, to which Plaintiff replied that he "was not a fighter."  (Id.)  Defendant hit Plaintiff in the stomach and chest, and then knocked him to the floor, shattering a coffee pot at the same time. Defendant then banged Plaintiff's head into the wall.  (See id.)  At this point Plaintiff states that the Sergeant came into the room, put handcuffs on him and took him to the Segregated Housing Unit ("SHU").  Plaintiff states that while Defendant was beating him up, the other COs were taunting him, and urging Defendant on.  (See id.)  A medical report from that day confirms that Plaintiff sustained cuts and abrasions on his right cheek, chest, and left arm.  (See Health Assessment Form, dated April 15, 2003, attached to Am. Compl.)

    **2.**    **The Disciplinary Proceeding**

From April 21-28, 2003, a disciplinary hearing was held on a misbehavior report filed by CO Gatto in connection with the events of April 15, 2003.  (See Def.'s Local Rule 56.1 Statement ("56.1 St.") ¶ 4; Ex. B to Declaration of Steven N. Schulman ("Schulman Decl."), dated March 14, 2006, Misbehavior Report dated April 15, 2003.) Plaintiff was found not guilty of "creating a disturbance," "interfering with employee" or

"threats," (Ex. B to Schulman Decl., Superintendent's Hearing Disposition, dated April 28, 2003.), but was "found guilty of harassment and given 14 days keeplock and loss of privilege as sanction" by Captain Schneider (56.1 St. ¶ 4.)  Plaintiff appealed the ruling to the Director of Special Housing/Inmate Disciplinary Program, Donald Selsky, who affirmed the ruling.  (See Ex. B to Schulman Decl., Review of Superintendents Hearing ("Tier III Hearing"), dated June, 30, 2003.)  Plaintiff also appealed to Superintendent of Fishkill, William Mazzuca. (See Letter from William Mazzuca dated May 9, 2003 (denying Plaintiff's request for a discretionary review), attached to Am. Compl.)

### 3. Plaintiffs Attempts to Grieve

Plaintiff states that on April 16, 2003, he met with "Captain Pike" to "discuss incident," and that an investigation was promised.  (See Ex. B to Affidavit of Michael Lawyer ("Lawyer Aff."), dated June 7, 2006, Journal of Michael Lawyer April 15, 2003-November 26, 2004[1] at 1 (recording meeting date on April 16, 2003); Ex. A to Stone Aff., Letter to IGRC, dated July 14, 2003 at 2 (noting that an investigation was promised).)  He also states that on April 17, 2003, he met with Sergeant Garino, who also promised an investigation.  (See Lawyer Aff. Ex. B at 1; Stone Aff. Ex. A. at 2.)  Plaintiff also states that, while confined in the SHU, he forwarded two grievances for filing with the prison's Internal Grievance Review Committee ("IGRC"), one on April 19, 2003 and one on April 28, 2003, neither of which were responded to. (See Lawyer Aff. ¶ 3; Stone Aff. Ex A at 1.)

During his time in the SHU, Plaintiff wrote a long, detailed letter, dated April 25, 2003, describing the incident.  (See Lawyer Aff. ¶ 3; Ex. E.)  Plaintiff states he sent

---

[1] If these journal entries were made contemporaneously, the journal may be admissible corroboration of Plaintiff's testimony.

3

copies of this letter to Mr. Mazzuca, Superintendent of Fishkill; Glenn Goord, Commissioner of DOC; "Inspector General of DOC[]"; Attorney General, Elliot Spitzer; and "Mr. Grady," the District Attorney of Dutchess County.  (See, Lawyer Aff. Ex. E.)[2] Attached to Plaintiff's Amended Complaint is a letter from Superintendent Mazzuca's office, dated May 9, 2003, denying his request for a review of his Tier III hearing; the letter is silent, however, about Plaintiff's claims of harassment by Defendant set forth in the April 25, 2003 letter.  (See Am. Compl.)  Plaintiff states he was told, by Captain Schneider on July 7, 2003, that Superintendent Mazzuca was forwarding the matter to the Inspector General's office for investigation.  (See Lawyer Aff. Ex. B at 5.)  A report filed by the Inspector General's office lists a referral date of May 29, 2003.  (See Ex. D to Schulman Decl., Report by Inspector Bigit, dated April 29, 2004)  Inspector Bigit interviewed Plaintiff on July 8, 2003.  (Id. at 1.)

On July 14, 2003, Plaintiff sent a letter to the IGRC, which IGP supervisor Michelle Stone acknowledged receiving, and considered a grievance.[3]  (See Ex. B to Lawyer Aff., Memorandum from Michelle Stone ("Stone Mem."), dated July 17, 2003.) In this letter, Plaintiff detailed his grievance against Defendant, and the steps he had taken to alert prison officials, including the two grievances he tried to file from SHU and the letter he had sent to Superintendent Mazzuca. (See Stone Aff. Ex. A.)  Ms. Stone returned the grievance to Plaintiff on July 17, 2003 because it was filed more than 14 days after the incident.  (See Stone Aff. Ex B.)  She instructed Plaintiff that, in order for his complaint to be considered, he had to present a letter with "mitigating circumstances" for filing past the deadline.  (Id.)

---

[2] Plaintiff attaches letters responding to or referencing his claim from several of these agencies.
[3] Defendant treats this grievance as the first communication to which DOC officials were required to respond.

Plaintiff states he met with Ms. Stone on July 23, 2003 and that she told him that he had "done all he could do." (Lawyer Aff. ¶3.) Ms. Stone denies having met Plaintiff. (See Stone Aff. ¶ 6 ("I have no recollection of meeting with plaintiff to discuss his grievance. It is my ordinary practice to record meetings with inmates . . . [my] files . . . contain no note of a meeting.").) She also denies having told him he had done all he could do. (See id. at ¶ 8 ("I would never tell an inmate that he had done all he could without first filing a grievance or that he should bring a federal legal action without first completing the grievance.").)

On August 18, 2003, Plaintiff sent a complaint to Thomas Eagan, at the Central Office Review Committee ("CORC"), who returned the complaint instructing Plaintiff to "submit [the] grievance or appeal directly to the Grievance Clerk at the facility." (Ex C to Stone Aff., Letter from Thomas Eagan, dated August 28, 2003.)

The Inspector General Office's investigation concluded on April 29, 2004, and recommended that the case be closed because "the force that was used to restrain inmate Lawyer was minimal." (See Schulman Decl. Ex. D at 7.) On November 24, 2004, Plaintiff was released from Prison on parole.

**B.     Procedural History**

Plaintiff's original Complaint was signed on June 19, 2003 and received by the Pro Se office on June 27, 2003. On September 25, 2003, Chief Judge Mukasey ordered Plaintiff to file an amended complaint showing that he had exhausted his administrative remedies. On October 23, 2003, Plaintiff filed his Amended Complaint, in which he detailed the steps he had taken to alert prison officials of his grievance, and asserted that he had exhausted his administrative remedies.

On January 22, 2004 the case was transferred to this judge.  Defendant filed his Answer on October 18, 2004, including, as an affirmative defense, Plaintiff's failure to exhaust his administrative remedies.  On March 16, 2006, after the completion of discovery, Defendant filed his Motion for Summary Judgment, based on Plaintiff's failure to exhaust his administrative remedies; Plaintiff filed his opposition on June 7, 2006; Defendant filed his reply on June 22, 2006.

## DISCUSSION

**A.     Standard of Review**

Summary judgment should only be granted when a court determines that there are "no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law."  Braham v. Clancy, 425 F.3d 177, 181 (2d Cir. 2005) (citing Feingold v. New York, 366 F.3d 138, 148 (2d Cir.2004)).  The court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  Id.  Furthermore, because Plaintiff is proceeding *pro* se "[the court should] read his papers liberally, interpreting them 'to raise the strongest arguments that they suggest.'"  Bennet v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (quoting Burgos v. Hopkins,14 F.3d 787, 790 (2d Cir.1994)).

**B.     Exhaustion**

**1.     Statutory Exhaustion**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Id. This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Supreme Court recently ruled that the PLRA requires "proper exhaustion . . . [which] demands compliance with an agency's deadlines and other critical procedural rules." Woodford v. Ngo, 126 S.Ct. 2378, 2386 (2006). Thus, "untimely or otherwise procedurally defective attempts to secure administrative remedies do not satisfy the PLRA's exhaustion requirement." Ruggiero v. County of Orange, 467 F.3d 170, 176 (2d. Cir. 2006) (quoting Woodford, 126 S.Ct at 2382).

> However, the Second Circuit has held that:
>
> [W]hile the PLRA's exhaustion requirement is mandatory, certain caveats apply. An inmates lawsuit may be allowed to proceed, despite failure to exhaust, if "administrative remedies are not available to the prisoner; . . . defendants have either waived the defense of failure to exhaust or acted in such as way as to estopp them from raising the defense; or . . . special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Id. at 175 (internal quotations and citations omitted).[4] These exceptions recognize that "[t]he PLRA's exhaustion requirement is not so rigid as to permit the barring of all suits brought after administrative remedies are no longer available, regardless of the circumstances, and simply because the plaintiff failed to follow prison grievance procedures to the letter." Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004).

   2.   **DOC's Administrative Remedies**

---

[4] The Second Circuit has not yet addressed Woodford's impact, and the district courts in this circuit have continued to apply the caveats to cases involving the PLRA. See e.g. Collins v. Goord, 438 F.Supp.2d 399, 411 n.13 (S.D.N.Y. 2006); Hairston v. LaMarche, 05 Civ. 6642 (KMW) (AJP), 2006 WL 2309592 *6 n.9 (S.D.N.Y. 2006); Hernandez v. Coffey, 99 Civ. 11615 (WHP), 2006 WL 2109465, * 3 (S.D.N.Y. 2006).

7

In 2003, for grievances regarding departmental and institutional complaints, New York State's Department of Corrections ("DOC") had a three step Inmate Grievance Program ("IGP") that an inmate had to follow to exhaust his or her complaint.[5]  See N.Y. COMP.CODES. R. & REGS. TIT. 7 ("7 N.Y.C.R.R.") § 701.7 (2003).  First, the inmate had to file a complaint with the grievance supervisor at his facility within 14 days of the alleged incident.  See id. § 701.7(a) (1).  If the inmate filed a grievance outside of this 14 day time period, his grievance would be denied as untimely unless he provided "mitigating circumstances" for his late filing.  Id.[6]  A timely grievance would be reviewed by the Independent Grievance Review Committee, ("IGRC"), a group of fellow inmates and prison officials.  IGRC representatives "ha[d] up to seven working days to review a grievance" and either resolve it informally or hold a hearing on the complaint.  Id. § 701. (a) (3), (a) (4).  Second, the grievant had four days to appeal an adverse ruling by the IGRC to the facility's superintendent.  If the grievance related to an institutional issue, the superintendent had 10 working days to respond.  Id. § 701.7(b)(1), (b)(5)[7]  Third, a denial of relief by the superintendent had to be appealed, within four days of receipt, to the Central Office Review Committee ("CORC")  Id. § 701.7(c)(1). Only grievances that were reviewed by CORC were considered exhausted.  See e.g. Collins v. Goord, 438 F.Supp.2d 399, 408 (S.D.N.Y. 2006) ("In order to exhaust remedies, an inmate in a  New York State correctional facility must pursue fully his complaint through DOC's three-step . . . IGP.").

---

[5] The version of the IGP procedures cited in this opinion is the one that was in place in 2003, when this incident took place.

[6] Mitigating circumstances include "attempts to resolve informally by the inmate, referrals back to the IGP by the courts."  Id. § 701.7(a) (1).

[7] A "departmental issue" is sent, by the superintendent, to the Central Office Review Committee upon receipt.

8

When an inmate grieved staff misconduct, or harassment,[8] however, the regulations provided for a different, "expedited procedure," 7 N.Y.C.R.R. at § 701.11. This process, as it existed at the time of the incident in this case, is reprinted here:

> Section 701.11 Harassment.
>
> (b) Procedure.
> (1) An inmate who feels that s(he) has been the victim of employee misconduct or harassment should first report such occurrences to the immediate supervisor of that employee. This does not preclude submission of a formal grievance.
> (2) All allegations of employee misconduct shall be given a grievance calendar number and recorded in sequence. All documents submitted with the allegation must be forwarded to the superintendent by close of business that day.
> (3) The superintendent or his designee shall promptly determine whether the grievance, if true, would represent a bona fide case of harassment as defined in subdivision (a) of this section. If not, then it shall be returned to the IGRC for normal processing.
> (4) If it is determined that the grievance is a bona fide harassment issue, the superintendent shall either:
> (i) initiate an in-house investigation by higher ranking supervisory personnel into the allegations contained in the grievance; or
> (ii) request an investigation by the inspector general's office or, if the superintendent determines that criminal activity is involved, by the New York State Police Bureau of Criminal Investigation.
> (5) Within 12 working days of receipt of the grievance, the superintendent will render a decision on the grievance and transmit said decision, with reasons stated to the grievant, the IGP clerk, and any direct party of interest. Time limit extensions may be requested, but such extensions may be granted only with the consent of the grievant.
> (6) If the superintendent fails to respond within the required time limit, the grievant may appeal his grievance to the CORC. This is done by filing a notice of decision to appeal with the IGP clerk.
> (7) If the grievant wishes to appeal the superintendent's response to the CORC, he must file a notice of decision to appeal with the inmate IGP clerk within four working days of receipt of that response.
> (8) All procedures, rights, and duties required in the processing of any other grievance as set forth in section 701.7(c) of this Part shall be followed.

7 N.Y.C.R.R. § 701.11.

---

[8] "Employee misconduct meant to annoy, intimidate, or harm an inmate constitutes harassment." Id. at § 701.11(a).

9

### C. Plaintiff's Administrative Remedies are Deemed Exhausted

Since Plaintiff's complaint related to harmful employee misconduct, it was reasonable for him to conclude that section 7011.11, the "harassment" section of the IGP applied to him. Plaintiff states that he met with Defendant's supervisors, Captain Pike and Sergeant Garino on April 16 and April 17, 2003 respectively, as required under section 701.11(b)(1). (See Stone Aff. Ex A at 1.). He also forwarded his grievance to Superintendent Mazzuca upon release from SHU, in a not unreasonable interpretation of 701.11(b)(2). (See Lawyer Aff. ¶ 3.) He never received a response to the letter from the superintendent.[9]

By taking these steps, Plaintiff pursued all of the procedures required of inmates by section 701.11. See Morris v. Eversley, 205 F.Supp2d 234 (S.D.N.Y. 2002) (holding that an inmate alleging harassment had exhausted her administrative remedies when she had reported the employee's misconduct to his immediate supervisors and had written a letter to the superintendent of the prison where she was an inmate).

Defendant contends that Plaintiff has not exhausted his remedies because he never successfully submitted a grievance to the IGRC, as required under section 701.7 of the IGP. (Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem."), dated March 15, 2006 at 6.) In 2003, however, the expedited procedures did not plainly require an inmate complaining of CO misconduct to initiate the grievance process through the IGRC. See Morris, 205 F.Supp.2d at 240 ("[A]lthough Morris failed to file a grievance with the IGRC, she exhausted her remedies under § 701.11 of the IGP.").

---

[9] The May 9, 2003 letter from Superintendent Mazzuca is non-responsive since it only refers to Plaintiff's request for a review of his Tier III hearing, not his complaint of employee misconduct by Defendant.

10

In 2004, citing "confusion resulting from ambiguity in the current text," and noting that "numerous judicial opinions [had set] forth sometimes inconsistent analysis of the provisions of this regulation," DOC amended the harassment procedures to clarify "that inmates seeking expedited review of employee misconduct grievances are [still] required to file a level 1 grievance, rather than write directly to the prison superintendent." Hemphill v. New York, 380 F.3d 680, 686 (2d Cir 2004) (quoting rule 28(j) letter from DOC's counsel). As contended by the plaintiff in Hemphill, in the unmodified version of the IGP, it was "manifestly unclear" that an inmate had to file a level 1 grievance before writing to the superintendent. See id. at 689.

In 2003, DOC's regulations said only that "[a]ll allegations . . . shall be given a grievance calendar number and recorded in sequence with all other grievances . . . [but] must be forwarded to the superintendent by the close of business day." 7 N.Y.C.R.R. 701.11(b)(2). Nowhere did section 701.11 state that an inmate was supposed to submit his grievance to the IGRC, as with institutional and departmental grievances. Section 7011.11 could reasonably be interpreted as stating (1) that an inmate should grieve only to the employee's "immediate supervisors," as required by section 701.11(a), who would then alert the superintendent; or (2) that an inmate should grieve both to the employee's "immediate supervisors" *and* write to the superintendent. Plaintiff reasonably pursued the latter course. See Giano, 380 F.3d at 679 (vacating dismissal of inmate's federal complaint because "even assuming that Giano read DOCS regulations incorrectly, his interpretation was hardly unreasonable.").

Moreover, Defendant's contention that Plaintiff failed to comply with DOC regulations because he did not file a timely "level one" grievance raises a genuine factual

11

issue because Plaintiff has asserted that he made two timely attempts to grieve from the SHU in April, 2003.  (See Lawyer Aff. ¶ 3.)

The Second Circuit has held that an inmate is excused from the PLRA's exhaustion requirement when "administrative remedies are not available to the prisoner." Ruggiero, 467 F.3d at 175(2d Cir. 2006) (internal quotations and citations omitted).  "To be available under the PLRA, a remedy must afford 'the possibility of some relief for the action complained of." Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004).

Plaintiff asserts that while in the SHU, he submitted two IGRC grievances, both within the 14 day time limit, to COs making rounds in the SHU, but that the IGRC did not respond.  (Lawyer Aff. ¶ 3; Stone Aff. Ex. A at 1 ("Apparently the CO's on SHU didn't put my letters in the grievance box.").)  The IGP devotes a section of its regulations to ensuring that prisoners can grieve from SHU.  See 7 N.Y.C.R.R. § 701.13 ("The following procedure contains the minimum standards for filing grievances by inmates in SHU areas and is to be instituted at all correctional facilities.") Among other things, it instructs the prison that "[a]rea supervisors will ensure that the completed grievances are placed in sealed envelopes, collected and forwarded to the IGRC office." Id. at § 701.13(3).

In Hairston v. LaMarche, 2006 WL 2309592 *8 (S.D.N.Y. 2006) "[The plaintiff] had been placed in the SHU immediately after the incident and he alleg[ed] that, contrary to DOCS policy, he was never aware of any IGRC staff making rounds in SHU." Id. The court found that "Hairston's testimony . . . create[d] an issue of fact as to whether administrative procedures were 'available' to him while he was in SHU." Id.  Here, Plaintiff was aware of the existence of the administrative process and submitted two

12

grievances while in the SHU; however, he got no response from the IGRC.  Thus he raises an issue as to whether DOC's administrative remedies were, in fact, made available to him when he attempted to submit timely grievances.

Defendant argues that, despite the difficulties Plaintiff may have encountered while in the SHU, Plaintiff's letter to the IGRC (Ms. Stone), written on July 14, 2003 and received by Ms. Stone on July 16, 2003 shows that administrative remedies were available to him.  (Def.'s Mem. at 12); see Cole v. Miraflor, 02 Civ 9981 (RWS) 2006 WL 457817, *5 (S.D.N.Y., 2006) ("The very fact that DOCS' policies provide for the filing of late grievances where there are mitigating circumstances, demonstrates that administrative remedies were available to Plaintiff.").  Defendant claims that Plaintiff's failure to resubmit his grievance, with allegations of mitigating circumstances, to the IGRC when given the chance to do so by Ms. Stone, shows that he failed to use the remedies extended by the prison's internal grievance system.

However, Ms. Stone's actions in response to Plaintiff's July 14, 2003 letter estopp Defendant from claiming that Plaintiff was at fault for not making full use of the prison's grievance system.  See Giano, 380 F.3d at 677 ("[W]e have held that non-exhaustion is an affirmative defense subject to estoppel in cases where prison officials inhibit an inmate's ability to utilize administrative grievance procedures." (citing Ziemba v. Wezner 366 F.3d 161, 163-64 (2d Cir. 2004)).  Plaintiff's July 14, 2003 letter was rejected by Ms. Stone as untimely.  In that letter Plaintiff set forth a number of mitigating circumstances for his untimely filing, including the fact that he filed grievances from the SHU,  that he had spoken with several of CO Gatto's supervisors about the incident, and that he had filed a letter with Superintendent Mazzuca.  (See Stone Aff. Ex. A.)  Any of these reasons

qualified as mitigating circumstances under the regulations. (See supra n. 6 (citing DOC's definition of mitigating circumstances).) Ms. Stone did give Plaintiff the option of refiling and "presenting mitigating circumstances." (Stone Aff. Ex. B.) However, in doing so, she was rejecting the mitigating circumstances Plaintiff cited in the letter he had already submitted. Her rejection of Plaintiff's mitigating circumstances effectively found that his allegations were insufficient and thus denied him further use of the prison's grievance system. Indeed, Plaintiff appealed to CORC and was referred back to the IGRC. (Stone Aff. Ex. C.) Plaintiff should not be blamed for refusing to continue this "never ending cycle of exhaustion." Abney, 380 F.3d at 669.

Defendant also contends that Plaintiff's failure to appeal Superintendent Mazzuca's failure to respond to his letter should bar his federal claim. (See Def.'s Mem. at 6, 14.) Section 701.11(b)(6) states that "[i]f the superintendent fails to respond within the required time limit, the grievant may appeal his grievance to the CORC." Id. Because the PLRA requires an inmate to "us[e] all steps that the agency holds out." Ruggerio, 467 F.3d at 175, Plaintiff should have appealed Superintendent Mazzuca's failure to respond to show exhaustion before submitting his Original Complaint in June 19, 2003. However, when Plaintiff filed his Amended Complaint on October 23, 2003, he was aware that the superintendent had taken action on his grievance; he knew it had been forwarded to the Inspector General's office, having been told so by Captain Schneider on July 7, 2003, and interviewed by Inspector Bigit on July 8, 2003. Since an investigation was the only relief available from the superintendent under the IGP, see 7 N.Y.C.R.R. § 701.11(b)(4), Plaintiff had no reason to believe he needed to appeal the superintendent's failure to respond to the CORC. As Judge Peck noted recently:

> DOCS procedures as to an administrative appeal are unclear to this Court where, as here, the Superintendent has directed that the complaint be investigated by the Inspector General's Office . . . . At that stage, the inmate has obtained at least partial favorable relief, and as the Second Circuit has held, where the inmate receives favorable relief there is no basis for administrative appeal.

Hairston, 2006 WL 2309592 at *9 (citing Abney v. McGinnis, 380 F.3d 663, 669 (2d Cir.2004)).

Defendant contends that Plaintiff should have at least awaited Mr. Bigit's report before filing his federal lawsuit. (Def.'s Mem. at 14.) Although Plaintiff's Amended Complaint was filed before the Inspector General's office had notified him that his claim of excessive force was considered unsubstantiated, section 701.11 contained no language advising Plaintiff that he must await the result of this report for his administrative remedies to be considered exhausted. Nor did this section state that in the event of an adverse report from the Inspector General an appeal to CORC was available.

Under these circumstances, Plaintiff's failure to await Mr. Bigit's report was justified by the opacity of section 701.11. See Giano, 380 F.3d at 679. It may be that DOC's intent was frustrated when Plaintiff brought his federal complaint before the investigation into his grievance had been completed and appealed. It was, however, DOC's responsibility to make that clear to prisoners through its regulations; it did not. Since it does not appear that Plaintiff's brought suit before Mr. Bigit's investigation concluded in an attempt to "circumvent the exhaustion requirement" in order to "bypass administrative procedural rules," Giano, 380 F.3d at 677, he must now be allowed to proceed.

15

## CONCLUSION

Defendant's Motion for Summary Judgment is denied. The trial is set for Monday, April 23, 2007. A joint pretrial order should be filed by April 16, 2007. There will be a telephone conference with both parties on February 28, 2007 at 9:00 AM; at this time, the Court should be advised if the parties have settled the case.

IT IS SO ORDERED.

Dated: New York, New York
February 21, 2007

Robert P. Patterson, Jr.
U.S.D.J.

*Copies of this Opinion and Order Sent to:*

*Plaintiff Pro Se:*
Michael Lawyer
109 Mowhawk Drive, Apt. 109
Cobleskill, New York 12043

Pro Se Office

*For Defendant:*
Eliot Spitzer
Attorney General of the State of New York
120 Broadway—24th Floor
New York, NY 10271
By: Stephen Schulman
Tel:    212-416-8654